106    358
23 SC  *205

# McDermott's Appeal.

1. The earnings of a wife belong to her husband (save in certain exceptional cases specified by Act of Assembly) and mere possession thereof by the wife affords no presumption of a gift thereof to her by the husband.

2. Where a wife deposited money of her husband, consisting chiefly of her own earnings, in a savings bank in her own name, and died: *Held*, in the absence of evidence that such deposit was made with the husband's knowledge, or of other sufficient evidence of a gift, that the money belonged to the husband.

3. The facts in this case held to be wholly insufficient to show a gift of the money by the husband to his wife.

4. Where, in the above case, after the wife's death the bank paid the amount of the deposit to the administrator of her estate, and the husband was admitted to claim as creditor upon distribution, in the Orphans' Court, of the funds in the hands of said administrator: *Held*, that the amount of said deposit should have been awarded to the husband and his attaching creditors, to the exclusion of the wife's children.

April 16, 1884.  Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEAL from the Orphans' Court of *Luzerne County:* Of January Term, 1884, No. 128.

This was an appeal by John McDermott from a decree of said court, distributing a fund in the hands of H. R. Hughes, administrator of Mary McDermott deceased, wife of appellant.

At the time of Mary McDermott's death (intestate) there was a deposit balance to her credit and in her name in the Miners' Savings Bank of Pittston, which John McDermott claimed to be his money.  He informed the bank of his claim and notified it not to pay out the money, but he subsequently procured the appointment of one Hughes, as administrator of his wife's estate, to whom the bank paid the fund.  Said administrator, however, declined to pay it over to him, whereupon he brought suit against the bank, but failed to recover. See McDermott *v.* Miners' Savings Bank, 4 Out., 285.  In that case Mr. Justice PAXSON, delivering the opinion of the court, said:  " The money was paid to the administrator with the consent of the plaintiff and by his procurement.  It is too plain for argument, that after such payment he had no claim against the bank.  He was turned round to the position of a creditor of his wife's estate, and as such creditor he had a right to pursue his claim in the Orphans' Court."

The administrator subsequently filed his account, which included said fund.  At the audit thereof John McDermott claimed the said fund, as creditor of his wife's estate.  It was

also claimed in part by certain attaching creditors of John McDermott, and it was also claimed by the children of the decedent, under the intestate law.

The adjudication of the auditing judge was as follows:—

The fund for distribution was obtained by the administrator from the Miners' Savings Bank of Pittston, and was at the time and now is claimed by the husband of the decedent as his own money and that it never belonged to the estate of his wife. It was thought when letters of administration were granted that the ownership of the fund could be most expeditiously and economically determined on the distribution of it in the Orphans' Court, and so it has been accounted for by the administrator as the wife's estate. A bill of review by the administrator is now pending for leave to withdraw the fund from his account owing to a mutual error of law. It is a rule founded on elementary principles that no one can claim the fund on distribution of a decedent's estate, unless he be a creditor, heir or legatee of the decedent (McBride's Appeal, 22 Smith, 480; Braman's Appeal, 8 Norris, 78), but at the request of all the parties interested, we have concluded to follow the suggestion of the Supreme Court in McDermott v. Miners' Savings Bank, 4 Out.. 285, and dispose of the question of ownership on distribution of the fund rather than on the proceedings for review.

The material facts of the case cannot be well understood without a narrative of the situation of the parties.

1. The decedent married John McDermott in 1866, and died in 1875, leaving to survive her as heirs her said husband and six children, one by a husband named Rouse, four by one named Gerrity, and one by McDermott.

2. Her husband Gerrity left her by will the use of all his property during widowhood, but the estate consisted almost entirely of the house and lot in Pittston where McDermott's business was carried on as hereafter stated.

3. After Gerrity's death she kept up a thrifty business of some sort until her son Martin had learned the business of butchering, and then she joined him as an assistant in the house left her by her husband. She and her son ran the butchering business until her marriage with McDermott, and the son continued in the same place for some time, and until McDermott and his wife moved in and took it off his hands, which was in 1869. They then ran the business until her death in 1875.

4. When they embarked in the business he was without experience as a butcher, having been a carpenter by trade, and he was also without any capacity to keep books, or do anything else requiring the ability to write. She assisted him

in the shop, waiting on customers, kept the books, deposited the money and drew the checks and notes all in his name. There was kept at the same bank two accounts, one called a "business account," which was in his name, and one a deposit or "savings account," drawing interest, which was kept in her name. It was from this last account that the fund in dispute came.

5. The bank books show that the business account commenced in December, 1869, with a deposit of $470, and from that time the deposits ran something like $200 per month. The savings fund account opens in November, 1872, with $1,400, followed by one 2d January, 1873, of $400, March 19, $600, and at the end of 1873 this fund amounted to $2,800. In June of 1874 the fund had reached $3,873, when $500 was withdrawn by the wife, and at the time of her death the fund was $4,840.73, as reported by the administrator in his account.

6. During the first two of the six years that McDermott and wife occupied the Gerrity premises as a residence and butcher shop the rent was paid by her application of the sum on Gerrity's debts, and at her death the rent owed by McDermott on a lease with the guardian of the Gerrity children was $975, for which the administrator has been attached.

7. It does not distinctly appear that Mrs. McDermott had any money or property of her own separate estate at the time of the marriage except as above stated.

8. It does appear that McDermott had at the time he went into business real estate valued at about $2,000, which he sold. At the death of his wife he had a special certificate of deposit at bank in his own name of $1,300, accounts on book since collected amounting to $1,000, and a balance on the business bank account of $143.58. Except the rent account, his debts amounted to something like $1,000, which were nearly all contracted in the business. Some of the creditors have attached the fund, but this will more fully appear in the report of the audit figures.

9. Of the savings fund account $700 was deposited by the wife in checks drawn by her on her husband's business account, and the source of the balance of the fund is not directly proven, but we feel safe in finding as matter of fact that it came from the business, and was deposited by her in her own name with his knowledge and consent, and that he intended it as a provision for his wife in case of misfortune in business. The savings bank book was found a short time before her death by her daughter in his chest, which was not under lock and key. The daughter gave the book to a friend, by whom it was delivered to the administrator.

10. One of the terms printed in the savings bank book

reads as follows: "Deposits made by married women, and by minors, of their own money and in their own names, cannot be withdrawn by their husbands, fathers or guardians."

These seem to be about all the facts at all material to the question at issue, and in arriving at these we have excluded the testimony of the husband and the children as to matters arising prior to the decedent's death, except where they were drawn out by the adverse party on cross-examination: McBride's Appeal, 22 P. F. S., 480; Gyger's Appeal, 24 P. F. S., 42; Kimble v. Carothers, 31 P. F. S., 494; Murray's Estate, 2 Pearson, 473. Under this state of facts to whom shall we say this fund belongs? In such cases the rule is that the wife must clearly show that the money was either owned by her before marriage or that it was acquired by her afterwards by means not provided by her husband, or that it was a gift from him to her: Walker v. Reamy, 12 Casey, 410; Gault v. Saffin, 8 Wright, 307; Wilson v. Silkman, 1 Out., 509; Speakman's Appeal, 21 P. F. S., 25.

In a contest with creditors the husband's gift cannot affect them, as he must be just before the law will allow him to be generous; but in a contest with heirs they may show the gift, but this must be done by clear and positive testimony: supra, Gamber v. Gamber, 6 Harris, 363; Bradford's Appeal, 5 Casey, 513; Topley v. Topley, 7 Casey, 328; Herr's Appeal, 5 W. & S., 494; Crawford's Appeal, 11 P. F. S., 52.

The mere possession of money by the wife is not sufficient evidence of her ownership: Parvine v. Capewell, 9 Wright, 89; Leow's Estate, 6 W. N. C., 333; and the converse is also true that the mere possession of a wife's money is no evidence, since the Act of 1848, that the title to it is vested in the husband: Hamill's Appeal, 7 Norris. 363.

Under these rules of law we have no hesitancy in saying that this fund belongs to the husband unless the proof will sustain us in finding that it was a gift by him to her as already found.

In arriving at the fact of gift we have considered these points: 1st, that it was chiefly through her skill, industry and economy that the money was acquired. 2d, that it was at her old business place that the business was made successful. 3d, that without her and her friends he never did anything at the business, beginning after the marriage and quitting immediately after her death. 4th, that he kept a business account and had a special individual certificate at bank of an amount of money nearly equal to the amount which he had at the time of marriage. 5th, that immediately after her death he inquired for the savings bank book, and said to the daughter something about the money of right should belong to him.

6th, that there is no evidence that she had concealed from him the fact that the savings account was in her own name. And 7th, assuming that he knew the fact of deposit in her own name, he could not have placed the fund more completely under her control and exclusive possession.

In Herr's Appeal, supra, the subject of the gift was money unaccompanied with any declaration amounting to a trust. There the money was kept in a lower or false bottom of a trunk to which the husband had access at all times, and to which he often went without the presence of his wife. There was no formal delivery of the money to her, and his actual access and control over it, and the legal unity of person made the possession as much his own as his wife's. The whole fact of gift rested solely on his declaration that he had given her a sum of money.

In Crawford's Appeal, supra, which was also a contest between the wife and the heirs, and therefore put upon different grounds than if it had been between strangers or creditors, the chief evidence of a gift by the husband to his wife was a memorandum made by his clerk in his account book crediting her with the sum of $3,000.

Here, as we have before said, starting with the assumption that she did not set up a fraud on him, the evidence of a completed executed gift could not be more clear.

We have, therefore, under the request of counsel, distributed this fund, first, to the attaching creditors of John McDermott, and the balance to the heirs of the decedent, of whom he is one.

Exceptions filed by John McDermott to the finding of the auditor that the evidence showed a gift, and to the distribution, were dismissed by the court in the following opinion :—

In our report of audit we found as matters of fact that the money in question never belonged to the decedent except as a gift to her from her husband, and that as matter of law the burden rests on her heirs, who assert the gift to establish it by something more than the mere possession of the fund by their mother. They are not obliged, however, to establish the gift by any more or other proof than what would constitute a gift to any other person who might be of kin to the donor : Herr's Appeal, 5 W. & S., 494; GIBSON, C. J.

To say that gifts by husbands to their wives are to be looked upon with " suspicion " where creditors or others are to suffer, is also true of all gifts or mere voluntary grants of chattels: 2 Blackstone, 440. But gifts to a wife or child are in no sense "suspicious": Hill *v.* Earnest, 13 W. N. C., 464. No one is to be deprived of his property without some evidence of his assent, but when he voluntarily places it out of

his own name into the name and dominion of another the burden is upon him to show that at the time of parting with it he reserved to himself some right to retain it: Hill *v.* Earnest, supra.

This fund was certainly placed beyond the control of the husband both under the terms printed in the bank book and the Act of 15th May, 1874 (P. L., 193), and if it was so deposited by his assent, it is equivalent to his express direction, and the delivery would be complete and undoubted.

From the barrenness of the evidence on the intent of the parties at the time the money was deposited we must resort to presumptions or inferences from acts done; and from the nature of the transaction and the relations of the parties, we must presume, 1st, that the deposit was made by the wife in her own name by her husband's direction or assent, and *for his own use;* or, 2d, that it was made without his knowledge or assent, and with intent, through his ignorance or otherwise, to defraud him; or, 3d, that it was made in pursuance of an intent to make a gift of it to her.

It is ruled in Tripner *v.* Abrahams, 11 Wright, 220, that "property transactions between husband and wife are to be scanned with great care and caution, yet they are not, as to their *bona fides,* to be overthrown upon presumptions merely; the same rules of law and evidence apply to them as obtain in other cases. Proof of ownership in the wife must be clear and satisfactory, sufficient to repel all adverse presumptions; but it need not be so clear that there can be no doubt, nor, if a doubt exists, must it operate affirmatively to induce a verdict against her." When a man invests his money in the name of a stranger, the law presumes that a trust was intended; but when the investment stands in the name of a wife or child the presumption is one of gift, to be rebutted, however, by the ordinary rules of evidence: Hill *v.* Earnest, 13 W. N. C., 464. In McCluskey *v.* Provident Institution, 103 Mass., 300, the proofs were that the deposit had been made by the wife at her husband's request and for his own benefit, and this was held sufficient to rebut the presumption of a gift to her. Sweeney *v.* Boston Savings Bank, 116 Mass., 384, is distinguished from the one just cited in that the husband made the deposit in his wife's name without explanation to rebut the presumption of an intended gift, and it was ruled that he could not recover it back. Applying these rules of law, then, we are not to presume that the wife intended to commit a fraud on her husband if any other reasonable view can be taken of the transaction. If the deposit was made for the husband's use and benefit, let him show it; indeed it is incum-

bent on him to prove it by some evidence, which we think he has utterly failed to do.

Was it a gift? Why not conclude that it was? What is there unreasonable about it?

Dismissing .the presumption that the wife concealed from her husband the character of the deposit, we are driven to the conclusion that he must have known of its existence and assented to it, and this seems every way reasonable ; ·for the business of making these deposits was carried on for many years with the bank book in his possession, and to say that he did not know the status of his several bank accounts is to presume that he was a mere booby. It must be remembered that he had a private bank account of the money which he had at ·his marriage; that he had another, called a " business account," on which his wife drew his checks ; while a third was the savings bank account in her name with no checks drawn against it. When the business account was low, notes were drawn by her in his name, but neither drew checks on their own separate account.

The mere possession of the bank book by the husband in common with his wife does not change the legal effect of the deposit or ownership of the wife (Bachman *v.* Killinger, 5 P. F. S., 414), and in Crawford's Appeal, 11 P. F. S., 52, the wife never saw the husband's account book, or knew of its existence during his life. The merits of the case seem certainly with the presumption of a gift, for it was, as we have said in our report, chiefly through the wife's skill, experience and labor that the fund was accumulated, and to give him the whole fund would be to enrich him and to deprive her children of a share of the inheritance. Besides, as he had no knowledge of the business, he may have thought it " hazardous," and hence proper for him to compensate his wife before any ·misfortune might overtake him. These considerations have no weight, of course, in the legal scales, for the fruits of her labor and skill belonged to him, but they show no lack of motive to make the gift. As to the question of the admission of the husband as a witness we refer to McCauley *v.* Cook, 5 Out., 209, and cases there discussed, showing that the Act of 1865 did not apply to his case, and hence that his testimony is not to be considered further than already allowed.

We therefore dismiss those exceptions which have not been withdrawn, and confirm the report of audit absolutely.

John McDermott thereupon took this appeal, assigning for error, the dismissal of his exceptions and the decree.

*Q. A. Gates (H. P. Bayne* with him) for the appellant.— There is no evidence of a gift of the money in dispute by

[McDermott's Appeal.]

John McDermott to his wife, nor can any such conclusion under the rules of law applicable to such gifts be drawn from the testimony. The case, therefore, falls within that class of cases "where the questions decided are inferences from other facts or conclusions from reasoning," which this court may decide as well as the court below: Phillip's Appeal, 18 P. F. S., 130; Sproull's Appeal, 21 P. F. S., 137; Moyer's Appeal, 27 P. F. S., 482; Hindman's Appeal, 4 Norris, 467; Ulrich's Appeal, 2 Pennypacker, 455.

The intent to create this separate property, whether the gift be from a stranger or the husband, must be clearly established: Rogers v. Fales, 5 Barr., 157; Bradford's Appeal, 5 Casey, 513; Crawford's Appeal, 11 P. F. S., 52; Hill v. Earnest, 13 W. N. C., 464. There must be some positive unequivocal act of gift and a mere permissive use by the wife will not divest the husband's title: Mews v. Mews, 15 Beav., 529; 21 Eng. Law and Eq., 556; Marshal v. Crutwell, L. R. 20 Eq., 328: Grant v. Grant, 34 Beav., 623; 11 Jur. N. S., 787; Dilts v. Stevenson, 2 C. E. Green (N. J.), 407; Walter v. Hodge, 2 Swanston, 97; Hanson v. Millett, 55 Me., 184; Jennings v. Davis, 31 Conn., 134; Shuttleworth v. Winter, 55 N. Y., 625; Bachman v. Killinger, 5 P. F. S., 417; McCluskey v. Savings Bank, 103 Mass., 300. Whenever circumstantial evidence is relied upon to prove a fact, the circumstances must be proved and not themselves presumed: Douglass v. Mitchell, 11 Casey, 440; Bickham v. Smith, 5 P. F. S., 336; Phila. Pass. R. R. Co. v. Henrice, 11 Norris, 431; Parvin v. Capewell, 9 Wright, 89; Young's Estate, 15 P. F. S., 101; Hamill's Appeal, 7 Norris, 363. No rules of the bank could protect the wife if she placed the money of some one else to her own credit. Equity will follow the fund: Frazier v. Bank, 8 W. & S., 18; Bank v. Jones, 6 Wright, 536; Bank v. King, 7 P. F. S., 202; McDermott v. Bank, 4 Out., 285.

*John Lynch* and *H. W. Palmer*, for appellees.—The findings of fact by the auditing judge, confirmed by the court, are conclusive, no clear error being shown. Where a man expresses an intention to give a thing, the subsequent possession of the thing by the donee is sufficient to authorize the presumption that the gift was actually made: McCluney v. Lockhart, 1 Bailey (S. C.), 117; Rhodes v. Childs, 14 P. F. S., 18. A near relationship of the parties and certain other circumstances may be regarded as favoring a transfer as a gift: Hepworth v. Hepworth, L. R., 11 Eq., 10; Rhodes v. Childs, *supra*; Bland v. MacCulloch, 9 W. R., 65; McDonald v. Crockett, 2 McCord (S. C.) Ch. 130; Carter v. Buchanan, 9 Ga., 539; Nichols v. Edwards, 16 Pickering, 62; Betts v.

Francis, 30 N. J. Law, 152; Henry *v.* Harbison, 23 Ark., 25; Towers *v.* Hagner, 3 Wharton, 51. A gift fully performed cannot be revoked without the consent of the donee : Ellison *v.* Ellison, 6 Vesey, 656. A man who deposits money in a savings bank in the name of his wife and has the bank book made in her name and delivered to her, cannot maintain an action against the bank for its refusal to pay the money to him, the reason being that the money is hers and not his : Sweeney *v.* Bank, 116 Mass., 384; McGraw *v.* Tatham, 84 N. Y., 677. When a man invests money in the name of a wife or child the presumption is one of gift : Dummer *v.* Pitcher, 2 M. & K., 262; Gosling *v.* Gosling, 3 Drewry, 335; Kingdon *v.* Bridges, 2 Vernon, 67; Marshal *v.* Crutwell, L. R., 20 Eq. 328; Bowser *v.* Bowser, 1 Norris, 57. The credit on the books of the bank is *prima facie* evidence of ownership : Bank *v.* Mason, 14 Norris, 117; Bank *v.* Tyler, 3 W. & S., 373; Frazier *v.* Bank, 8 Id., 18; Jackson *v.* Bank. 10 Barr., 61; Bank *v.* Jones, 6 Wright, 541; Stair *v.* Bank, 5 P. F. S., 368; Arnold *v.* Bank, 21 Id., 290; Egbert *v.* Payne, 3 Out., 239. A husband may consent that his wife's earnings shall be hers : McKennan *v.* Phillips, 6 Wharton, 571; Herr's Appeal, 5 W. & S., 494; Duffy *v.* Ins. Co., 8 Id., 413; Hutton *v.* Duey, 3 Barr., 100.

· Mr. Justice PAXSON delivered the opinion of the court, April 28, 1884.

The money in controversy was the money of the husband, and the fact that his wife helped him to earn it does not make any difference. It is settled by authority that the earnings of the wife belong to the husband save in certain exceptional cases specified in various Acts of Assembly. Unless, therefore, it can be shown that there was a gift of the money by the appellant to his wife, the decree of the court below cannot be sustained.

In the report of audit the learned Judge came to the conclusion that it was a gift, and in his opinion upon the exception says : "Was it a gift? Why not conclude that it was? What is there unreasonable about it?" We answer that we cannot conclude it was a gift because there was no evidence of it and money which confessedly belongs to a man cannot be taken from him without evidence.

We do not differ from the learned Judge as to any of the facts found, but we cannot concur in his deductions from those facts. The reasons upon which he based his conclusions may be summarized as follows : That the business was carried on at the old place of business of the wife ; that it was chiefly through her skill, industry, and economy, aided by her friends, that the money was acquired ; that he had a special deposit

of his own, and that she did not conceal from him the fact that she was keeping the particular deposit in question in her own name ; that immediately after her death he inquired for the savings bank book and said to the daughter something about the money of right should belong to him ; and lastly, assuming that he knew the fact of deposit in her own name, he could not have placed the fund more completely under her control and exclusive possession.

Upon such weak and inconclusive facts as these, we are asked to hold that the appellant intended that the amount of this deposit, $4,840.73, by far the larger part of his estate, should become the absolute property of his wife, so as to be entirely beyond his control, and go to her next of kin in case of her death. There is no evidence that he knew of this de- posit in his wife's name until after her death; there is evidence that he was an ignorant man and could neither read nor write ; that his wife was an active business woman; that she atten- ded to the shop, kept the books, and did most of the bank business. Even had the fact been that the proceeds of the business were kept by his wife in her own name with his knowledge, it would afford no presumption under the circum- stances that he intended an irrevocable gift to her of the money. Her possession of it was his possession, as much so as if she had kept the money in a safe or a bureau instead of in the bank. It is a common thing in every-day experience for a woman to have the possession and control of her hus- band's money and the husband of the wife's, and if from such fact we were to draw the conclusion that the custodian was the owner of the money, it would lead to unexpected results. But in this case there is no satisfactory evidence that he even knew the deposit was in his wife's name; on the contrary, the presumptions are all the other way. And, as before ob- served, no matter how much the wife's aid may have contrib- uted to make the money, that circumstance did not change the fact of its ownership, nor does it raise any presumption of a gift, while the claim he made when inquiring for the bank book tends to negative such presumption.

That the mere possession of money by the wife is not suffi- cient evidence of her ownership was settled by Parvin v. Capewell, 9 Wr., 89, where it was said: "A mere gift of money to a wife is not a settlement of it as her separate estate, for it may be for safe keeping and deposit, without any intention to divest the husband's title. And her possession of funds ordi- narily implies no more than that she is holding them for her husband." This is settled law, and is peculiarly applicable to this case. There is not a scintilla of proof of any intention of the appellant to make a gift of this money ; nothing can be

implied from the facts beyond a mere custody thereof on the part of the wife.

The cases cited by the learned Judge do not sustain his conclusions. Herr's Appeal, 5 W. & S., 494, was a case in which there was strong evidence of a gift and this court said: "But such gift must be established by clear and convincing proof, not only of the act of donation and delivery, but of her separate custody of it." The same doctrine is held in Tripner *v.* Abrahams, 11 Wr., 220. In Bachman *v.* Killinger, 5 P. F. S., 414, it was held that the possession by the wife of the husband's moneys, security, and property is very slight evidence of the transfer of the ownership, and his possession of her chattels ought to be considered still less evidence of title in him. In Crawford's Appeal, 11 P. F. S., 52, the husband informed his wife that he had added $3,000 to her money ; he directed his clerk to credit her in his books with the $3,000 as cash received from her, and it was done. He credited her regularly with the interest of that sum in connection with the other sums belonging to her until his death. Held that this was an executed gift followed by an express trust for his wife and payable to her from his estate, but that it could not be supported as a debt. In addition, it appeared that the husband had that amount of his wife's money in his possession. Here, there was a plain intent to make a gift followed by a positive unequivocal act. But where there is a mere permissive act, such as to allow the wife to be a custodian of his money, I know of no case in which it has been held that a gift can be implied from such act.

We need not pursue the subject further. We can see nothing in the case from which a gift of this money by the husband to the wife can be reasonably implied.

The money appears to have been received by the administrator from the cashier with the understanding that the question of ownership should be settled in the Orphans' Court upon distribution. There also appears to be a proceeding pending in the Orphans' Court to strike this item from the administration account. As the money has actually gone into the estate of the wife, we may treat the appellant as her creditor, and to prevent circuity of action we have concluded to dispose of the main question upon this appeal.

> The decree is reversed at the costs of the appellees, and it is ordered that the deposit less the amount due the attaching creditors be paid to appellant.