## Estate of Michael Staib, deceased.   Appeal of Gustave F. Bender and Pauline Bender.

*Executors and administrators—Surcharge for failure to collect interest.*

The mere fact that a bank had for some years credited the balance of an account on deposit with interest, and that for eight years prior to death of depositor it had ceased such credit, does not raise such a clear presumption of liability for interest after the date when it ceased to so credit interest as would warrant a surcharge of the administrator.

*Banks and banking—Deposit—Estoppel—Evidence.*

The presumptive title to a deposit in bank is in the person in whose name it stands.   The burden of proof is on any one claiming it from the administrator.

Where the claimant was a partner in the bank which had credited the depositor with interest on its deposit and which paid over the money to depositor's administrator, the presumptions arising from such acts and omissions must be overcome to establish a claim against the prima facie ownership of the decedent, based on an alleged general assignment to the claimant made many years before, during which time the assignee was aware of the existence of a deposit by the assignor with the banking firm of which the assignee was a partner.

Argued May 8, 1899.   Appeal, No. 84, April T., 1899, by Gustave F. Bender and Pauline Bender, from decree of O. C. Beaver Co., Sept. T., 1895, No. 21, in distribution of the estate of Michael Staib, deceased.   Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Reversed.   Opinion by RICE, P. J.

Exceptions to auditor's report.  Before WILSON, P. J.

It appears from the record that an appeal was taken from the decree of the orphans' court to the Supreme Court, and on October 31, 1898, was certified to the Superior Court as per report in 188 Pa. 238.

It appears also that the case arose on the distribution of the first and final account of the administrator, of Michael Staib, deceased, showing a balance in the hands of the accountant of $1,580.39. The account was referred to an auditor to make distribution of the balance shown.  It appears from the facts found by the auditor that decedent joined the Harmony Society of Beaver county in 1869 ; that in 1871 he had a fund on deposit with the Economy Savings Bank, a partnership in which the Harmony Society was a partner; that up to 1883 interest was credited at the rate of four per cent on this account; that the ledger account of the bank shows a 'memorandum to the effect, " Interest stopped January 1, 1883," and that one of the officers of the bank notified a trustee of the Harmony Society, one of the partners in the bank, to notify decedent that no further interest would be paid on his deposit after January 1, 1883.  There was no evidence that Staib, the decedent, ever received this notice.  The last check drawn by decedent was January 13, 1871, and interest on the balance was duly credited to him till January 1, 1883.  By the articles of agreement of the Harmony Society, which is an unincorporated religious body, and which was signed by decedent in 1871 and confirmed in 1890, it appears that decedent had agreed to assign and by the articles of association reported to have assigned to the society all his estate, real and personal, thereby becoming entitled to the support of the association during life.  Letters of administration were taken out on his death and the money on deposit was paid to the administrator by the savings fund.  At the audit it was claimed by the decedent's next of kin and by the Harmony Society.  The auditor surcharged the administrator with the amount of interest from 1883 to the date of settlement, and awarded the fund to the next of kin of decedent under the intestate law.

Exceptions were filed to the report of the auditor which were sustained by the court below, who awarded the fund to the Harmony Society disallowing surcharge of accountant with interest.

Gustave F. Bender and Pauline Bender, grandchildren and next of kin of decedent, appealed.

*Errors assigned* were (1) in awarding the balance in the hands of the administrator to the trustees of the Harmony Society. (2) In not surcharging the accountant with interest at four per cent per annum on the amount of the deposit from January 1, 1883, to the day of his appointment, namely, June 19, 1883. (3) In making the following statement or finding in the opinion: " The auditor found in considering the contract of membership alone as a question of law, that Michael Staib was not the owner of the fund; that the contract of membership was an assignment which carried the fund to the society, and Staib died without an estate."    (4) In the following conclusion of law : " 1. The legal title to the fund on deposit in the Economy Savings Institution was in Michael Staib, but by assignment contained in the articles of association he held the legal title only as trustee for the Harmony Society, and for its benefit, and as between Michael Staib's estate and the Harmony Society, the relation is that of debtor and creditor."    (5) In the following conclusion of law: " 2. The deposit in the Economy Savings Institution was a chose in action, and as such the equitable title passed to the Harmony Society when Michael Staib signed the articles of association, in which he not only bound himself but his heirs, executors and administrators to the due performance of his undertakings."    (6) In the following conclusion of law : " 3. The balance of the fund for distribution must be awarded to the Harmony Society."    (7) In the following conclusion of law : " 4. The administrator should not be surcharged with interest from June 1, 1883, as one of the trustees of the Harmony Society had notice that interest would cease at that date." (8) In not awarding the fund in the hands of the accountant, including the said surcharge, after the payment of expenses, to the grandchildren of Michael Staib, the present appellants.

*George Shiras, 3d*, with him *Lewis W. Reed*, for appellants.— In the leading case of McClurkan v. Byers, 74 Pa. 405, and the cases subsequent thereto, the knowledge of one partner is the knowledge of all.   How much more so must it be in a case where the partners did the same thing for thirteen years ?    Unques-

tionably in this case the law should impute knowledge, but even that is unnecessary, for the evidence shows actual knowledge by the managing head of the Harmony Society that the bank was paying Staib interest. Therefore, this question does not present the case of trying to enforce either a trust or an unexecuted contract. The evidence shows that the society consented to Staib withholding some of his money.

When we come to consider the legal objections to the distribution of this fund to the Harmony Society, they seem almost as plain as the conclusions from the facts above stated. In the first place, under what theory do they claim? The lower court in the opinion reversing the auditor seems itself uncertain. The learned judge says the Harmony Society was a creditor at the distribution. If so, when did it become a creditor? If in 1871, then the statute of limitations is a bar. But under the facts it appears that the society was always a debtor of Staib's, for the first twelve years obligated to pay both interest and principal, and after 1883, leaving aside the surcharge, bound to pay the principal on demand as one of the partners in the private bank. Then, again, the lower court regarding its first position as doubtful says Staib was a trustee and seemingly tries to enforce a trust under a decree of distribution. When was this the law? At this point we cannot do better than quote from the auditor in answer to the lower court's positions on what constitutes a creditor, a chose in action, what constitutes a trust, and in what manner, if a trust can be imputed, can it be enforced:

" The relation of the Harmony Society and the other partners who compose the Economy Savings Bank to Michael Staib in respect to this deposit was simply that of debtor and creditor, unaccompanied by any fiduciary connection. Thus from the time he joined the society, February 15, 1871, until his death, June 16, 1891, the Harmony Society by its acts said to Michael Staib, ' We are your debtor;' and even after his death by its acts it said to Michael Staib's administrator, ' Yes, we are indebted to Michael Staib.' "

Concerning the Harmony Society's right to raise the question of title to the fund, let us see whether it has any such title to the fund by virtue of the articles of association which will avail it here: McBride's Appeal, 72 Pa. 480.

447, (1899).]                    Arguments.

The maxim is imbedded in the common law that an heir can be disinherited only by express devise or necessary implication, and that implication has been defined to be such a strong probability that an intention to the contrary cannot be supposed: Rupp v. Eberly, 79 Pa. 141.

A valid gift can only be made by words in præsenti, accompanied by such delivery of possession as makes the disposal of the thing irrevocable: Burns's Estate, 29 Pitts. L. J. 282. The most recent authority on this subject is Smith's Estate, 144 Pa. 428.

To give validity to a declaration of trust the indispensable thing is, that the donor or grantor, or whatever he may be called, should have absolutely parted with the interest which had been his up to the time of the declaration; should have effectually changed his right in that respect and put the property out of his power, at least in way of interest: Warriner v. Rogers, L. R. 16 Eq. 340.

Where the executor does not collect a claim he is to be surcharged if it was collectible: Bartolet's Appeal, 1 Walk. 77.

The real issues are:

1. The legal right of the Harmony Society to be heard at all as an exceptant before an auditor, it failing to stand upon any claim of right recognized in the administration of estates in Pennsylvania.

2. That as the evidence shows, and the auditor has so found, the nondelivery of personal property, expressly assented to by Staib's associates, the society cannot now repudiate such an agreement or contract, especially as the death of Staib put his title immediately in his heirs and revocation became impossible, even if they ever possessed such a right in Staib's lifetime, without his assent and the delivery of the money by him to the society. Now, it seems to us, that the court can, if it deems best, wholly disregard all questions bearing on the construction of the articles of association and the intricate questions therein involved, and by sustaining the auditor afford the relief due in this particular case.

*Agnew Hice*, of *Hice & Hice*, for appellee.—By the execution of the article of agreement the decedent became a party to the articles therein mentioned, wherein we find the covenants of membership.

Not only was his purpose to be effectuated in his lifetime, but when he was dead his care was that the solemn obligations into which he had entered should be performed by those whom he knew would follow him.

The consideration for this grant is set forth in the fourth and fifth articles of the agreement.

These covenants the decedent ratified and confirmed in exact and precise language by his execution of the articles of ratification, dated April 30, 1890, less than one year before he died.

Did the decedent at any time during his lifetime repudiate his contract? This is answered by the fact that he died in fellowship.

The next question, then, is, if the decedent has not in his lifetime repudiated his contract, may his next of kin do so?

This question is forever set at rest by the decision of the Supreme Court of this state in the case of Schriber v. Rapp, 5 Watts, 351, which was a case involving the consideration of the articles of 1827, before their modification by the articles of 1836.   GIBSON, Chief Justice, says : " It is supposed, however, that as the intestate had power by the articles to secede from the society and take out of it whatever he had brought into it; (it will be borne in mind that this was before the articles of 1836), his successor to his personal rights may exercise it as his personal representative.   Such, however, are not the terms of the articles, nor would a posthumous exercise of the power consist with the disposition he thought fit to make by dying in fellowship. . . . The right of secession is therefore intransmissible."

If then the ancestor had no title which he could set up against the Harmony Society, and the next of kin by their act could not create one, their claim can have no foundation in honesty, and they have no title in existence.

The relation between the bank and Staib was that of debtor and creditor, and this relationship the bank could not deny because it is estopped so to do on grounds of public policy. Bank v. Alexander, 120 Pa. 476, and Bank v. Mason, 95 Pa. 113, are conclusive of this point.

It were hard lines, indeed, if a man is estopped from asserting a right because he belonged to a partnership which did a certain act which it was compelled by law to do, and admitted a title which it was estopped to deny.

447, (1899).]     Arguments—Opinion of the Court.

The statute of limitations does not apply. As soon as the fund could be claimed on its distribution in the orphans' court, the society made an application for it.

The case of Nachtrieb v. The Harmony Settlement, 3 Wallace, Jr., 66, which is referred to by the appellants as taking the position that the articles are contrary to law, we submit decides no such thing, but in so far as it bears on that question holds the other way.

We would refer to another case, Burt v. The Oneida Community, because it is a recent case, and also recognizes the case of Schriber v. Rapp as an authority upon the point. This case is found in 137 N. Y. 346, decided by the court of appeals, February 28, 1893.

It was a joint holding of property by the adult members of the community, with this qualification, that upon the death or withdrawal of a member no share or interest therein passed to him or his personal representatives, but they who survived or remained continued to hold jointly the entire property in solidum: Goesele v. Bimeler, 14 How. 589; 5 McLean, 223; Gasely v. Separatists Society, 13 Ohio St. 144; Waite v. Merrill, 4 Maine, 102; Schriber v. Rapp, 5 Watts, 351; Gass v. Wilhite, 2 Dana, 170.

OPINION BY RICE, P. J., October 9, 1899:

According to the testimony of John Bender, who was present at the ceremony, Michael Staib was admitted to membership in the Harmony Society on February 15, 1869. At that time he had on deposit in the Economy Savings Institution the sum of $640. Between that time and February 15, 1871, when he signed the articles of association, he made two deposits amounting to $860, and drew one check on the fund for $500. He was credited with interest on January 1, 1870, $36.43, and on January 1, 1871, $76.03. The balance standing to his credit when he signed the articles of association was $1,112.46. After that time, as before, he was annually credited on the books of the bank with interest at four per cent until January 1, 1883. In April, 1893, Michael Staib died, not having disturbed the account, nor been credited with or demanded interest in the mean time. On June 19, 1893, letters of administration were issued to the accountant. At that time the balance of principal

and accrued interest, as shown by the books of the bank, was $1,658.69. This was paid to the administrator, who charged himself with it in his account filed in September, 1895.

1. The auditor appointed to report on the exceptions, to restate the account if necessary, and to distribute the balance, surcharged the administrator with interest at the rate of four per cent from January 1, 1883, to June 19, 1893, the date when the fund came into his hands. This conclusion was put on the ground that the bank was liable, under a contract with the depositor, to pay interest; therefore the administrator was derelict in not demanding and collecting it. But it is to be borne in mind, that the money came into the possession of the bank as an ordinary deposit, and not as a loan on time. For aught that appears to the contrary, it was subject to check, or to withdrawal in any other legitimate mode, at any time and without previous notice to the bank. Ordinarily a general deposit draws no interest, unless by agreement, until upon demand for payment it is refused or unreasonably delayed. The only evidence tending in any degree to show that there was an agreement to pay interest is the fact, that for a time the decedent's account was credited with interest. Each credit of interest may be regarded as an implied admission of liability for the amount credited, but although it is a circumstance bearing legitimately upon the question, it is not, of itself, an admission of liability for interest to accrue in the future. Such an agreement might possibly be inferred, if proof of the crediting of interest annually during a series of years had been accompanied by evidence, for example, of a general usage of banks, or of this particular bank, during the period between 1883 and 1893, to pay, or credit depositors with, interest on annual balances. But in the absence of any other evidence whatever, and especially in view of the fact that during the eight years in question the depositor apparently raised no objection to the account as kept by the bank, we do not think that the bare fact, that the bank, prior to 1883, credited the account with interest on annual balances, raises such a clear presumption of liability for interest after that time, as would warrant a surcharge of the administrator.

The question whether, under the circumstances of the case, the administrator was chargeable with interest from the expiration of one year after the fund came into his hands to the date

of the filing of his account, is not raised by any assignment of error; therefore we will not discuss it.

2. We now come to the question of distribution. The dispute is between the two grandchildren of Michael Staib and the Harmony Society. The former claim as his next of kin, and the latter by virtue of the articles of association signed by the decedent in 1871, which, it is urged, operated as an assignment of all his property, including his choses in action, and therefore vested the ownership of this fund in the society.

The very statement of the claim of the Harmony Society suggests a doubt as to the jurisdiction of the orphans' court, to take cognizance of it in this proceeding; for the general rule is, that upon distribution of a decedent's estate, as shown by the final account of the administrator, no one is entitled to claim any portion thereof who does not claim it through the decedent, and as part of his estate, either as creditor, legatee or next of kin: McBride's Appeal, 72 Pa. 480; Braman's Appeal, 89 Pa. 78; Winton's Appeal, 111 Pa. 387; Law's Estate, 140 Pa. 444. It is contended, that this general rule does not apply where the fund is wrongfully included in the account, either because, though in the name of decedent, it is really a trust, or because the title is in another person. In support of this proposition the counsel cite Marshall v. Hoff, 1 W. 440, Robb's Appeal, 41 Pa. 45, Miller's Appeal, 84 Pa. 391, Rupp's Appeal, 100 Pa. 531, McDermott's Appeal, 106 Pa. 358, and McCarron's Est., 15 W. N. C. 485.

Let us look at the case from this standpoint. Arguing upon the assumption that when, upon the distribution of a fund accounted for by an administrator as the assets of the estate, such a case is shown, the orphans' court has the general power of a court of equity to compel payment of the fund to the cestui que trust, or to the true owner, as the case may be, the right of the Harmony Society to be awarded the fund in question is reasoned out in this way: The relation between bank and depositor is that of debtor and creditor simply; after February 15, 1871, Michael Staib held the legal title to the chose in action, the debt of the bank, in trust for the Harmony Society; if the money had been paid to him in his lifetime he would have been compellable to pay it over to the Harmony Society; when the administrator received it, it went into the

assets of the decedent's estate, subject to the same trust; therefore, the rule laid down in McBride's Appeal does not prevent the orphans' court from awarding it to the equitable owner.

In this statement of the case the fact that the Harmony Society was a partner in the firm conducting the banking business as the Economy Savings Institution is entirely ignored, whereas we regard it as of the greatest significance, both as related to the question of this being a trust fund, as well as to the question of the right of the association to dispute the title of the estate in this proceeding.

The burden of proof was on the claimant. The presumptive title to a deposit in a bank is in the person in whose name it stands. To overcome this prima facie presumption, the society relied on a general assignment of all his property contained in the articles executed by Michael Staib in 1871, followed by no attempt on the part of the donee to reduce the chose to its exclusive possession. Opposed to this was the evidence that the banking firm annually credited Michael Staib with interest for a dozen years thereafter, and in the account, as finally made up on its own books more than twenty years thereafter, charged itself as debtor to him.

Taking its own books as evidence that the relation of debtor and creditor, and not that of trustee and cestui que trust, existed between them at the death of Michael Staib, does not necessarily involve any impeachment of the assignment contained in the articles of association signed by him. Those articles related to property owned by the member at the time of signing, "in possession or in remainder, or in reversion or in expectancy;" they did not bind him to transfer to the society property acquired afterwards. Nor is it clear that the confirmatory articles of 1890 contemplated a gift to the society of property acquired in the mean time. Therefore, it might well be that the provision in the first articles operated as an equitable assignment of the chose in action in question, and yet that by some arrangement, the exact nature of which, owing to the lapse of time and the death of witnesses, it would be impossible to prove by direct testimony, the rights of the society in this particular fund had been surrendered, and the rights of Michael Staib had revested.

The proposition that the Harmony Society is not affected by the acts of the Economy Savings Institution because there is no evidence that the former society " through the proper channels knew that Michael Staib . . . . had a deposit in the bank," cannot be sustained. In the first place, the partners in the bank are presumed, prima facie at least, to have had notice of the deposit, and to be responsible for the manner in which the account was kept. See McClurkan v. Byers, 74 Pa. 405, and Stockdale v. Keyes, 79 Pa. 251. In the second place, one of the trustees of the Harmony Society had express notice of the deposit in 1883, and yet, so far as appears, no attempt was made to withdraw it, or to have it transferred to the credit of the society.

It is true there is no affirmative evidence that Michael Staib asserted ownership of the fund after 1871. But this absence of evidence to that effect is scarcely sufficient to warrant an affirmative finding that he did not assert it. Moreover, his inaction was not extraordinary. The money was safe, and he did not need it for his present wants ; the fact that he did not draw it out lacks the significance of the positive acts of the Economy Savings Institution, to which we have called attention.

There is the additional fact distinctly found by the auditor and court below, and not controverted on the argument before us, that the Economy Savings Association (the claimant being a partner in that concern) paid the money to the administrator. It is urged, that it would have been against public policy to refuse payment, and, therefore, the payment cannot be regarded as voluntary. We are unable to assent to this proposition. The rule of public policy was thus stated by Justice Paxson in Bank v. Mason, 95 Pa. 113 : " It is clearly against public policy to permit a bank that has received money from a depositor, credited him therewith upon its books and thereby entered into an implied contract to honor his check, to allege that the money deposited belonged to some one else. This may be done by an attaching creditor or by the true owner of the fund, but the bank is estopped by its own act." In the same case it was said : " It is well settled that money deposited in a bank to the credit of A. may be shown to be the property of B. It may be reached by attachment on the part of the judgment creditors of B., or its payment may be stopped by a proper notice on the part of

B., that the money belongs to him." This qualification of the general rule of public policy, that a bank cannot deny the title of the person in whose name a deposit stands, is recognized in all the cases to which our attention has been called. If a bank is justified in refusing payment after notice from the true owner of the fund, he being a third person, clearly, the banking firm of which the present claimant was a member might have held on to the fund without violating any rule of public policy. The fact, therefore, that the claimant paid, or as a member of the firm permitted to be paid, the deposit to the administrator, cannot be denied effect as some evidence of his right to the fund, upon the ground that the payment was compulsory.

Much reliance is placed on McDermott's Appeal, 106 Pa. 358. The case would be more closely analogous if the Miners Savings Bank that paid over the deposit to the administrator, had been the claimant. The parties in that case recognized the difficulty in the way of an adjudication of the ownership of the fund on distribution and agreed that it might be disposed of in that proceeding instead of in the proceeding then pending, to strike the item from the administrator's account. This appears in the opinion of the auditing judge. The case certainly does not rule, that one having the possession of a fund standing in the name of a decedent may voluntarily pay it over to the administrator, and then on distribution deny the title of the estate.

If there were any evidence that this method was resorted to, with the assent of the parties in interest, to obtain an adjudication of a disputed question of ownership, the case would present a different aspect. But as it stands, there is no evidence that any question was raised, prior to distribution, as to the real ownership. Nor is there any evidence, that the fund went into the administrator's hands under any mistake of law or fact, or subject to any agreement or understanding that the question of ownership was left open. Under these circumstances, it may well be doubted, whether, upon distribution, the administrator could be treated as a mere stakeholder, and the orphans' court be made the forum for deciding a dispute between the estate and the society.

We need not, however, put our decision upon the ground that the court had not jurisdiction. Nor do we say, that the books

of the bank are conclusive evidence against the society of Michael Staib's ownership of the fund. It is sufficient for present purposes to say, that, viewing the evidence as a whole, it does not clearly and satisfactorily appear that at his death the real ownership of the fund was not in him. The auditor correctly found that it was distributable to the next of kin.

The decree is reversed at the costs of the appellees, the balance ($1,580.39) in the hands of the administrator is distributed as follows: to costs of audit as shown by the auditor's report, $144; to Gustave F. Bender, $718.19; to Pauline Bender, $718.19, and the record is remitted to the court below with directions to carry this decree into effect.