In re WILKESBARRE FURNITURE MFG. CO.

(District Court, M. D. Pennsylvania. June 18, 1904.)

No. 107.

1. BANKRUPTCY—FUNDS—DISTRIBUTION—COLLATERAL ATTACK.

Where money was awarded to a lien creditor of a bankrupt as the result of an audit after hearing, she was protected in the possession of the fund by the order of the referee until such order was vacated by a direct proceeding for that purpose.

2. SAME—TRUST FUNDS—MISAPPROPRIATION—PREFERENCE.

Where a trustee of a bankrupt corporation, who was also a member of a firm, appropriated money belonging to the firm to pay a misappropriation of the funds of the bankrupt corporation, and the creditors of the firm, which also became bankrupt, took no steps to stay the distribution of the funds of the corporation pending bankruptcy proceedings against the firm, nor to follow the firm's funds so misappropriated, they were not entitled to claim that such funds awarded to a lien creditor of the corporation constituted a preference which the firm's trustee was entitled to recover.

3. SAME—RECLAIMING OF TRUST FUNDS.

Misappropriated trust funds in the hands of a trustee in bankruptcy should be followed and reclaimed by appearing before the referee and making claim to them before they have been distributed to other parties.

In Bankruptcy. On exceptions to report of referee.

W. N. Reynolds, Jr., for exceptions.
P. A. Meixell, for lien creditor.

ARCHBALD, District Judge. The fund for distribution, amounting to the sum of $1,440.39, was derived from the sale of the bankrupt's real estate, and was awarded by the referee to Mary E. Kulp, who held a mortgage thereon, which, as a first lien on the property, was prima facie entitled to be paid. The money is claimed, however, by the trustee of Harrower Bros., bankrupts, upon the following grounds: This firm was composed of D. C. and Frank B. Harrower, the latter being trustee of the Wilkesbarre Furniture Manufacturing Company, of whose estate the fund in controversy is a part. On May 21, 1903, before proceedings against Harrower Bros. had been instituted, Frank B. Harrower, being short in his accounts as trustee, appropriated $1,944 to make them good out of moneys derived from a sale by Harrower Bros. just prior thereto of their stock in trade. The moneys so obtained, along with others on deposit in bank to his credit as trustee, amounting in all to the sum of $5,838.29, and representing, to the extent of $4,710, the proceeds of real estate of the furniture company which he had sold as trustee, were subsequently distributed by the referee, $3,745.25 being awarded to Mrs. Kulp to apply on her mortgage.

It is contended that the appropriation by Frank B. Harrower of the money of the firm to make good his accounts constituted a preference, and that Mrs. Kulp, having knowledge of the facts, and having benefited thereby, cannot retain the advantage which she secured, and must now forego, in favor of the trustee of Harrower Bros., the claim which

she would otherwise have to the fund in court. But it is difficult to follow the reasoning by which this result is sought to be brought about. The money which Mrs. Kulp received as a result of the former audit was awarded to her after due hearing, and she is protected by the order of the referee, which established her right to it, until it is set aside by proceedings directly taken for that purpose. Ostensibly the fund distributed represented the proceeds of real estate on which she had a lien, and did so, in matter of fact, to the extent of $4,710, which was more than enough to pay what she received. But whether it did so or not, she is not responsible. It stood for that, and was adjudged to her in due course, without fraud or collusion on her part; and that is all we need to know. The suggestion that it constituted a preference has nothing whatever on which to stand. Passing by the fact that she cannot be said to have got the money of Harrower Bros. any more than others who participated in the distribution, her acceptance of that which the law gave her in response to her claim cannot be wrested into anything of that kind. The preference, if preference there was within the meaning of the act, was to the estate represented by the trustee, to make good what he had abstracted from it, for which the estate, if it could be made liable for the act of the trustee, would have to respond, and not creditors who have simply received dividends out of it. The truth is that, if there was this diversion of funds by which the estate of the furniture company profited at the expense of the estate of Harrower Bros., that which was diverted from the one to the other should have been directly followed and reclaimed. It was undoubtedly a fraud on the creditors of Harrower Bros. for Frank B. Harrower to appropriate the money derived from the sale of the firm stock in order to make good his individual delinquencies as trustee, and upon proof of this, if the fund could be sufficiently identified and traced, an order might have been obtained restoring it to where it belonged. But the time and place for this was at the audit, where the fund into which it entered was being disposed of, and not here and now, when it is not. Ordinarily, in the distribution of a fund, only those are entitled to come in who are not adversary. McBride's Appeal, 72 Pa. 480; Law's Estate, 140 Pa. 444, 21 Atl. 429; Staib's Estate, 11 Pa. Super. Ct. 447. But there is a well-recognized exception to this where it appears that the fund in whole or in part includes that which rightfully belongs to others, who would otherwise be deprived of it without redress. Marshall v. Hoff, 1 Watts, 440; Miller's Appeal, 84 Pa. 391; McDermott's Appeal, 106 Pa. 358, 51 Am. Rep. 526. It became the duty, therefore, of those who had the interests of the Harrower estate in charge to appear before the referee at the former distribution and prefer the claim that is now made. It is true that as yet there was no trustee, the proceedings against the firm being resisted, and an adjudication not being reached until some time afterwards; but that difficulty could have been met by a stay of proceedings, which the petitioning creditors would have had a standing to suggest. It is said, however, that this was requested, and refused both by the referee and by the court. But if this be so as to the court—of which I have no remembrance and there is no record—I can only say it was a

mistake which cannot be rectified in the way proposed. If the same parties were before the court, it is possible that it might be, treating this distribution as simply a continuation of the first. But that is not the case. The parties who participated in the former audit are paid and gone, and the result of reopening it is not to be visited on Mrs. Kulp alone. However much, therefore, I may regret that an attempt in the proper direction should have been made abortive by any error of mine, I see no way of remedying it as the case stands. The right that is sought to be enforced is the return of moneys wrongfully included in the fund previously distributed, which should therefore have been specifically claimed and traced. It cannot be made to attach under different conditions, by substitution, to another fund, derived beyond question from an unobjectionable source.

The report of the referee is confirmed.[1]

---

[1] As to the following and reclaiming of trust funds in bankruptcy, see In re Marsh, 8 Am. Bankr. R. 576, 116 Fed. 396; In re Mulligan, 9 Am. Bankr. R. 8, 116 Fed. 715; Welch v. Polley (N. Y.) 69 N. E. 279, 11 Am. Bankr. R. 215; Bills v. Schliep, 11 Am. Bankr. R. 607, 127 Fed. 103.