SHUGART v. ATLANTA, K. & N. RY.

(Circuit Court of Appeals, Sixth Circuit. December 1, 1904.)

No. 1,311.

1. MASTER AND SERVANT—DEATH OF SERVANT—RAILROADS—FIREMAN.
    Where, in an action for the death of a railway fireman by the derailment of his engine while it was running backward at high speed, there was evidence that the derailment occurred at a curve near a stock gap, that many of the ties in the curve were rotten, which had permitted the outer rail to sink one-half inch lower than the inner rail when it should have been four inches higher, and that there were many low joints around the curve which included the cattle gap, some being out of surface from one to two inches, the question of defendant's negligence in the preservation of the track was for the jury.

2. SAME—FELLOW SERVANTS.
    Since a railroad fireman and his engineer are fellow servants, no recovery could be had for the death of such fireman by the derailment of the engine, if the same was caused by the fault of the engineer.

3. SAME—PROXIMATE CAUSE.
    Where, in an action for death of a railroad fireman by the derailment of the engine on which he was working, there was evidence justifying a finding that the derailment would not have happened but for the defective condition of the track, whether such defective condition was the proximate cause of the accident was for the jury, though the speed at which the train was operated, and the fact that the engine was being run with the tender in front, might have been contributing causes.

4. SAME—CONTRIBUTING CAUSES.
    Where a railroad fireman was killed by the derailment of the engine on which he was working, directly caused by a defect in the track, the

¶ 4. See Master and Servant, vol. 34, Cent. Dig. §§ 515, 521; Negligence, vol. 37, Cent. Dig. § 75.

railroad company was not excused from liability ·on the ground that the engineer was guilty of negligence contributing to the accident in running the train at an excessive rate of speed.

In Error to the Circuit Court of the United States for the Eastern District of Tennessee.

G. W. Pickle (J. W. Drummond and Pickle, Turner & Kennerly, of counsel), for plaintiff in error.

Smith, Hammond & Smith and Cornick, Wright & Frantz (Alexander W. Smith and John H. Frantz, of counsel), for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

LURTON, Circuit Judge. John S. Shugart, a fireman in the service of the defendant railway company, was killed by a derailment of the engine upon which he was firing. This is an action under the Tennessee statute, by his widow, to recover damages.

At the conclusion of all of the evidence, the jury was directed to find for the railway company. There was no dispute but that the deceased was killed by the derailment of his engine. Neither is it claimed that the fact of the derailment and death of the decedent establishes any presumption of negligence, as it might if he had been a passenger. The case turned, in the judgment of the trial judge, and in the judgment of the counsel who have argued the case·here, upon the question of the proximate cause of the derailment.

The undisputed facts were that the engine derailed was hauling a work train of 12 cars engaged in carrying slag for ballasting purposes from one point on the road to another. As there was no turntable convenient, the engine was moved backward with tender in front. The derailment occurred when returning empty for slag at a speed not exceeding 20 miles per hour, taking that view of the evidence most favorable for the party against whom a peremptory charge is directed, a speed which does not seem to have exceeded the maximum allowed for trains of this class. The derailment occurred on a four-degree curve, and, from the indications on the ground, the fore wheel of the tender first mounted the outside rail at a point about 60 feet south of a certain stock gap. The flange rode this rail for some 10 feet, and then crossed the rail, and, after traveling on the ends of the ties, ran off the embankment and turned over. This action of the tender derailed the engine on opposite side of the track.

With reference to the condition of the roadway at place of the disaster, there was evidence that the timbers of the stock gap were rotten, particularly the stringers or sills which supported the cross-ties, and that, in consequence of the choking of the ditch under the gap, the ground had softened, and the whole structure was depressed below the surface of the track an inch or more; that the outer rail, instead of being four inches higher than the inner rail, was lower than the latter by about one-half inch. There was also evidence that there were many low joints around the curve

which included this cattle gap, some being out of surface as much as from one to two inches, and, that there were many rotten cross-ties in same curve; that in some cases the spikes were out, and in others so loose as that they could be pulled out by hand. The evidence tending to show this condition of the roadway at this curve was strongly contradicted by the witnesses for the railway company. But that there was a very material conflict in respect to the condition of the roadway at the curve where this derailment occurred is not denied, and was assumed by the trial judge when he directed the verdict.

Expert witnesses testified that the effect of rough joints, in a curve, on each side of a depressed cattle gap, with outer rail below level of inner rail, would be to cause a lurching movement, first to one side and then the other, calculated to cause a derailment. There was also expert evidence that lurching or rocking due to bad surfacing would be increased, and the danger of derailment greater, when a train is pulled at some speed with tender in front of the engine. There was also expert evidence that excessive speed in rounding a curve is one of the causes of derailment. It also appeared that the outside rail in a curve should have an eleva-tion over the inside rail of one inch for every degree of curvature, and that the failure of the outside rail to be at its proper elevation is another cause of derailment. There was also evidence that de-railments sometimes occur without any assignable cause. De-fendant's roadmaster, after an examination of the place, testified that in his opinion the alleged defective stock gap had nothing to do with the wreck, as he thought the tender and engine would recover balance, if any lurching was produced by its condition, before reaching the point where it first mounted the rail; and that in his opinion the derailment was due to excessive speed. Defend-ant's track supervisor, after a like examination, testified that he could not say what was the cause of the derailment.

It is the duty of a trial judge, when called upon to direct a ver-dict, to take that view of the evidence most favorable to the side against whom a verdict is to be directed. It was therefore the duty of the trial judge to assume that the roadway of the defend-ant at the place of derailment was in the condition testified to by the witnesses for the plaintiff. That there was evidence contra-dicting this, and that the defendant's evidence upon this point may have outweighed the plaintiff's, will not justify the withdrawal of a case from the jury, although it may justify a new trial. The view which this court takes of the function of a judge in directing a verdict, as compared to his duty in passing upon a motion for a new trial, has been fully and frequently considered by this court, and we need only refer to the cases: Mt. Adams Ry. Co. v. Low-ery, 74 Fed. 463, 20 C. C. A. 596; Travelers' Ins. Co. v. Randolph, 78 Fed. 754, 24 C. C. A. 305; Standard Accident Co. v. Sale, 121 Fed. 666, 57 C. C. A. 418, 61 L. R. A. 337. But the trial judge did not assume that the evidence was not legally sufficient to go to the jury upon the question as to whether the company had not been negligent in respect to the condition of its track. Upon the con-

trary his direction was based upon what he regarded as the insufficiency of the evidence to justify a finding that any such defective condition of the stock gap was the proximate cause of a derailment which occurred some 60 feet south of the cattle gap. On this subject he said, in explanation of his direction, "that, conceding there was a defect in this stock gap, as some of the witnesses undertake to point out, and that it may have given the engine a rolling or tilting motion as it passed over it, I conclude that it would be a mere matter of speculation for you to say th..: this was the proximate cause, or that there was any causal connection between that and the accident south of that; whether it was a rail and a half or two rails would be a mere matter of guesswork."

There was opinion evidence that any rocking motion given the tender and engine in running over the cattle gap would be corrected and the engine recover its balance before going as much as 60 feet, that being the point beyond the cattle guard where the first sign of climbing the rail was observable. This expert opinion would be of much greater weight but for the fact that there was evidence that the joints were out of surface at the first two or three joints after passing over the cattle guard, and that one or more of these joints were out of surface as much as from one to two inches, and also evidence that the outer rail or two beyond the guard were not at the right elevation for a four-degree curve. In other words, there was evidence of a continuance, in a lesser degree, between the gap and the place where the wheel of the tender first mounted the outer rail beyond the gap, of the same negligent condition as that claimed to exist at the cattle gap itself. There was also expert opinion that the vibratory motion given the engine and tender at the gap would be renewed at the first low joint, which was about 15 feet beyond the gap, and again repeated when the low joint on opposite rail was reached, and so on; the tender being thrown first one way and then the other.

The question of proximate cause was not therefore to be considered apart from the alleged condition of the track between the cattle gap and the first indication of mounting the outer rail. But we do not suppose the very careful trial judge intended to ignore the evidence referred to, or to limit the question of proximate cause to the alleged condition of the cattle gap alone. The aspect of the evidence which evidently moved him to stop the case was the testimony touching the speed of this train, traveling as it was with tender in front. Following the quotation from his charge above, he said:

"I am further of opinion that the weight of evidence showing that [the derailment] was probably the result of too rapid speed is more satisfactory than is the evidence that tends to show that it was caused by any trouble with that stock gap. Now, in that state of the case, as much as our sympathy may go out for the loss of a young man of good prospects, I think it would be to turn the case over to you for speculation."

At another place he said:

"It is a known fact that an engine may get off the track without any cause which can be assigned with reasonable certainty. I feel decidedly

that when you come to say in this case, with reasonable certainty, just what caused this wreck, that it can not be done on this evidence, that is, that between the two possible contentions about it, if there is a difference in the probability of how it occurred, that difference is in favor of the probability that a too rapid rate of speed, coupled with the fact that the engine and tender were running backwards, * * * I think the physical circumstances show that fact, in view of the kind of wreck, and the way the cars were piled—the place at which they were thrown together—that they were running with quite an amount of force."

To further illustrate the ground of the court's action, we quote from an earlier paragraph:

"If the evidence leaves the case in such a state as that two or more agencies may have been operative to cause the accident, for one of which the company would be liable, and for one or more of which it would not be liable, why, then, it becomes what is called a speculative question, and is not a case which, under the law, can go to the jury, it being the duty of the plaintiff to satisfy the jury that it resulted from an agency for which the company is responsible," etc.

In short, the circuit judge, as he more than once told the jury, was of opinion that the case fell within Patton v. T. & P. Ry. Co., 179 U. S. 658, 663, 21 Sup. Ct. 275, 45 L. Ed. 361, where, in a suit by an employé for an injury resulting from a defective engine step, it was said, that in such an action, the burden being upon the employé to show that the master had been guilty of negligence, "it is not sufficient for the employé to show that the employer may have been guilty of negligence, the evidence must point to the fact that he was. And when the testimony leaves the matter uncertain, and shows that one of half a dozen things may have brought about the injury, for some of which the employer is responsible and for some of which he is not, it is not for the jury to guess between these half dozen causes and find that the negligence of the employer was the real cause, when there is no satisfactory foundation in the testimony for that conclusion." But this means nothing more than has been said many times, that the party upon whom the burden rests must adduce sufficient evidence to make out his case, and if that which he offers affords no reasonable foundation, if credited, for reasonable men to found a verdict upon in his favor, it is the duty of the court to take the case from the jury, and not permit a verdict based upon conjecture rather than evidence. But in the case on hearing there was, as we have seen, evidence legally sufficient to go to the jury upon the question of the negligence of the company in the care and preservation of the track at the place of derailment.

It may be conceded that, unless this alleged bad condition was a proximate cause of the derailment, plaintiff had no case, and the direction was right. Negligence which does not cause or contribute to an injury is nonactionable. But proximate cause is a question of fact, and a question for the jury if there is substantial evidence from which it may reasonably be deduced that the negligence shown was a proximate cause of the injury complained of. McDonald v. Toledo, etc., R. Co., 74 Fed. 104, 20 C. C. A. 322; Railroad v. Kellogg, 94 U. S. 469, 24 L. Ed. 256. It devolved, therefore, on the plaintiff in this case to show by evidence, facts, and

circumstances from it which it might be reasonably inferred that but for the bad condition of the track at the place of derailment the accident would not have occurred. It may be, if the work train upon which deceased was engaged had been moving with the engine in its usual place, and at a slow speed, that this derailment would not have occurred. The position of the tender and the backward movement of the engine may well be regarded as an incident to the character of the work and road upon which deceased was engaged. Dangers reasonably incident to such a mode of moving this work train were part of the risks assumed by the deceased. If the speed of the train was excessive, as claimed, that was a fault of the engineer, if a fault at all. For any negligence of the engineer in the running of this train the company would not be responsible to decedent, because the engineer and his fireman were fellow servants. If, therefore, the excessive speed of this train, running with tender in front, was the sole proximate cause of the wreck, the plaintiff cannot recover, and the judgment is right. But, upon the other hand, if the alleged bad condition of the track at the point of derailment contributed to the wreck, not indirectly, but proximately—that is, directly—the defendant would be liable, although the negligence of a fellow servant also contributed. The bad condition of the track may not have been the sole cause of the accident, but if it was a cause without which the derailment would not have happened, then it is a contributory cause. A cause without which the derailment would not have occurred is necessarily a proximate cause, although other causes may have co-operated in bringing it about.

In McDonald v. Toledo Ry. Co., 74 Fed. 104, 109, 20 C. C. A. 322, 326, a plaintiff's buggy was overturned and plaintiff seriously injured. Plaintiff's horse was frightened by a cause for which the defendant was not liable, and ran over a pile of snow negligently made in the street by the defendant. The fright of the horse was the cause of plaintiff's buggy being carried on and over this pile of snow. But the declaration averred that but for the presence of this object plaintiff would not have been overturned or hurt. This allegation on demurrer being confessed, we said:

"Then this mass of snow, which ought not to have been where it was, and was only there through the negligent interposition of the defendant, was a cause, which, if it had not existed, the plaintiff's buggy would not have been overturned, and he would have sustained no injury. If, therefore, the negligence of the company was not the causa causans, it was causa sine qua non. Whether it was a cause without which the accident would not have happened is a question of fact, unless the circumstances appearing demonstrate that the causal connection was not proximate."

We cited, for the doctrine of that case, Hayes v. Railroad, 111 U. S. 228, 4 Sup. Ct. 369, 28 L. Ed. 410, and Railway v. Kellogg, 94 U. S. 469, 24 L. Ed. 256. Postal Tel. Co. v. Zopfi, 73 Fed. 609, 614, 19 C. C. A. 605, is to same effect.

That cause is proximate without which the accident would not have happened, but which, in the probable sequence of events, and without the interposition of a new and efficient cause wholly sufficient in itself, produces the wrong complained of. Milwaukee

& St. P. R. Co. v. Kellogg, 94 U. S. 469, 479, 24 L. Ed. 256; Union Pac. Ry. Co. v. Callaghan, 56 Fed. 988, 6 C. C. A. 205; Chicago Ry. Co. v. Price, 97 Fed. 424, 38 C. C. A. 239.

Even though the engineer may have contributed to the happening of the accident, that will not relieve the company if it also contributed; "that is to say, had a share in producing it." Railroad v. Cummings, 106 U. S. 700, 702, 1 Sup. Ct. 493, 27 L. Ed. 266; Chicago, etc., Ry. Co. v. Sutton, 63 Fed. 394, 11 C. C. A. 251; Chicago, etc., Ry. Co. v. Price, 97 Fed. 424, 38 C. C. A. 239.

In the case at bar we think the question as to whether the bad condition of the defendant's track in immediate proximity to the place of derailment did not directly contribute to the wreck, and was not a cause without which the wreck would not have occurred, should have been submitted to the jury.

That the manner in which the train was operated may have contributed to the danger of derailment is not a defense, if it appear that the fault of the company also proximately contributed. This is one aspect of the case to which the attention of the trial judge does not seem to have been directed, and is, doubtless, the source of his error.

The question as to whether the bad condition of the track was so obvious to one employed as a fireman as to support an instruction upon the ground of assumption of risk has been considered. We do not think the opportunities of deceased as a fireman were so good as to charge him, as matter of law, with knowledge of the condition of the track at the place of derailment. It was a question for the jury. Railroad v. Price, 97 Fed. 424, 431, 38 C. C. A. 239.

Reverse the judgment, and grant a new trial.