BERRY et al. v. CHASE et al.

(Circuit Court of Appeals, Sixth Circuit. June 7, 1910.)

No. 2,024.

1. PRINCIPAL AND AGENT (§ 145*)—UNDISCLOSED PRINCIPAL—ELECTION OF REMEDIES.

While any decisive act by a party after knowledge of his rights and of the facts determines his election in the case of inconsistent remedies, yet an act to have the effect of election must be decisive, and the assignment of a claim against an agent, with an express authorization of suit against any undisclosed principal, although the assignor had knowledge

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of a principal originally undisclosed, does not amount to an election to look to either the agent or principal to the exclusion of the other.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 499; Dec. Dig. § 145.*]

**2. PRINCIPAL AND AGENT (§ 145*)—UNDISCLOSED PRINCIPAL—RIGHT OF ELECTION.**

Where a plaintiff had the right of election between suing an agent and a principal, originally undisclosed, a delay of a few months after knowledge of the principal before bringing suit against him *held* not so unreasonable as to bar the right of election, where it did not appear that defendant was prejudiced by such delay.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 499; Dec. Dig. § 145.*

Election of remedies against undisclosed principal or agent, see note to Berry v. Chase, 77 C. C. A. 166.]

**3. ASSIGNMENTS (§ 80*)—INCIDENTS.**

The owner of a debt upon which he had the right to sue a principal or his agent through whom the debt was contracted, the principal being then undisclosed, in assigning the debt may also transfer to the assignee such right of election.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. § 147; Dec. Dig. § 80.*]

**4. PRINCIPAL AND AGENT (§ 190*)—ACTION—EVIDENCE.**

A firm of brokers *held* justified, under the circumstances testified to, in carrying out the orders of agents, of whom defendant was the undisclosed principal, by buying stock on the New York Stock Exchange to cover a short sale after defendant had failed to comply with a demand for more margins.

[Ed. Note.—For other cases, see Principal and Agent, Dec. Dig. § 190.*]

In Error to the Circuit Court of the United States for the Western District of Tennessee.

Action by Jacob Berry and Harold L. Bennett, copartners as Jacob Berry & Co., for the use of John P. Darwent, against Mattie L. Chase and Ike A. Chase, executors of the last will and testament of William J. Chase, deceased. Judgment for defendants, and plaintiffs bring error. Reversed.

L. Lehman, for plaintiffs in error.

J. H. Malone, for defendants in error.

Before SEVERENS, WARRINGTON, and KNAPPEN, Circuit Judges.

KNAPPEN, Circuit Judge. The plaintiffs, Jacob Berry & Co., a firm of stock brokers doing business in the city of New York, brought this suit, for the use and benefit of Darwent as assignee of their claim, to recover the loss alleged to have been sustained by them through their purchase to cover a short sale of 25 shares of Northern Pacific Railway stock, made by the direction of Schloss, Miller & Malone, a Memphis, Tenn., brokerage firm, which firm is alleged to have acted in the transaction on behalf of Chase as undisclosed principal. Upon a former trial verdict was directed for the defendant upon the ground that the purchase by Berry & Co. was shown to have been made not upon Chase's order, but at the sole direc-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tion of Schloss, Miller & Malone; and upon the further ground that the contract of sale was a Tennessee contract, the laws of which state make a contract for the sale of stocks or bonds void "when either of the contracting parties have had no intention or purpose of making actual delivery or receiving the property in specie." This court reversed the judgment of the Circuit Court, holding that there was substantial evidence from which a jury might find that Chase had authorized Schloss, Miller & Malone to make the purchase in question, as well as evidence tending to show that the contract was a New York contract, the laws of which state make such stock transaction void only where both parties join in the intention that there shall be no delivery of the subject of the contract of sale or purchase. See Berry v. Chase, 146 Fed. 625, 77 C. C. A. 161, where the material facts appearing upon the former trial are set out. The assignment from Berry & Co. to Darwent was of the former's "claim and debt owing to them by the firm of Schloss, Miller & Malone, of the city of Memphis, Tenn., of $5,762.50, created in the purchase by said Jacob Berry & Co. for and on behalf of said Schloss, Miller & Malone, on the 9th day of May, 1901, of 25 shares of the capital common stock of the Northern Pacific Railway Company * * * with the right and authority to said John P. Darwent to sue for and recover same from said Schloss, Miller & Malone, as well as any undisclosed principal or principals whom they represent in the purchase of said shares of stock, etc." It was held by this court, upon the former review, that Berry & Co., upon discovering Chase's principalship, had the right to elect to hold Schloss, Miller & Malone or Chase, but that they could not hold both liable, and that they must choose between the two and must abide an election once made. 146 Fed. 626, 77 C. C. A. 161. Upon a later trial a verdict was again directed for defendant upon the ground that, at the time of the assignment to Darwent, Berry & Co. had not elected to sue Chase instead of Schloss, Miller & Malone; that they were required to make such election personally, and could not assign the right of election to another. The trial judge further expressed the opinion that what was really transferred to Darwent was the account against Schloss, Miller & Malone and not an account against Chase or any other undisclosed principal, and that up to the time of the transfer Berry & Co. were looking to Schloss, Miller & Malone for payment of the claim, and that Darwent thus acquired only the right to sue the latter firm.

Defendant contends that the evidence is undisputed that Berry & Co. had, previous to the assignment to Darwent, elected to look to Schloss, Miller & Malone, rather than to Chase. If this contention is correct, verdict was properly directed for defendant. The plaintiff, on the other hand, insists that the record contains undisputed evidence that Berry & Co. had elected to look to Chase alone. In support of defendant's contention, principal reliance is had upon the language of the assignment itself, which it is insisted transfers an account against Schloss, Miller & Malone, and so is inconsistent with a release of their liability; and in connection therewith, the fact

that although Berry & Co. learned through Schloss, Miller & Malone on June 24, 1901, of Chase's principalship, and were then requested by the former to release them and to take action against Chase, they not only are not shown to have released the account against the brokerage firm, but, on the contrary, appear to have carried it for more than three months, and until October 1, 1901, without making any demand upon Chase. The evidence relied on by plaintiffs is that no demand appears to have been made by the plaintiffs upon Schloss, Miller & Malone, together with the testimony of one of the defendants, that following a talk by telephone with one of the plaintiffs a day or two after the communication of June 24th, plaintiffs "took it out of our account and put it to Chase's account and looked to Chase for it."

In our opinion the evidence was not sufficient to establish an election by Berry & Co. to look to either Chase or the brokerage firm, to the exclusion of the other. On the one hand, although the instrument of assignment in terms conveys an account against Schloss, Miller & Malone, any inference from this fact is overcome by an express authorization of suit against any undisclosed principal. On the other hand, the testimony as to Berry & Co.'s treatment of the account, following the conversation by telephone, was manifestly no more than a conclusion of the witness, and incompetent as evidence. While any decisive act by a party, after knowledge of his rights and of the facts, determines his election in the case of inconsistent remedies (Robb v. Vos, 155 U. S. 13, 15 Sup. Ct. 4, 39 L. Ed. 52), yet an act to have the effect of election must be decisive. The mere act of charging the agent, after knowledge of an originally undisclosed principal, does not, as matter of law, amount to an election to look only to the agent. Jones v. Johnson, 86 Ky. 530, 6 S. W. 582. It has been held, for manifest reasons, that the bringing of suit against both the agent and his originally undisclosed principal does not constitute an election to hold the principal and discharge the agent. Mattlage v. Poole, 15 Hun (N. Y.) 556. Whether or not the mere bringing of suit against the agent, without proceeding to judgment, would amount to an election to look to the agent (a proposition upon which the authorities are not entirely agreed), there was here no suit against the agent, nor was there any overt act in our opinion inconsistent with the right of Berry & Co. to ultimately look to Chase. It is urged that the delay in electing to sue Chase was unreasonable. We cannot say this is so, in the absence of any altering for the worse of Chase's position towards Schloss, Miller & Malone, or of any circumstance making the holding of Chase unjust or unreasonable.

Was Berry & Co.'s right of election assignable? Defendant, in denial of such assignability, invokes the familiar rule that contracts involving the exercise of personal skill and knowledge, or in which a party has been contracted with by reason of the trust and confidence reposed in him personally, are not assignable. A license to explore for minerals is, accordingly, held not assignable. Mendenhall v. Klinck, 51 N. Y. 246. Other applications of this rule are found in Arkansas Smelting Co. v. Belden, 127 U. S. 379, 8 Sup. Ct. 1308,

32 L. Ed. 246; Burck v. Taylor, 152 U. S. 634, 651, 652, 14 Sup. Ct. 696, 38 L. Ed. 578. But in the case we are considering there was involved in the election whether to sue the brokers or their principal on no consideration of trust or confidence. The right to make this election ws not agiven because of any such consideration. On the contrary, the law gave the right absolutely to Berry & Co. to elect which of the two parties to hold liable. An analogy is also suggested between the right of election here presented and the right to perfect mechanics' liens, which in several cases have been held not assignable. This nonassignability, however, is usually, if not universally, predicated upon the statutory character of the lien. Thus in Rollin v. Cross, 45 N. Y. 766, 771, cited by defendants, it is said:

> "The lien under statutes of this character is, in general, a personal right given to the mechanic, materialman and laborer, for his own protection, and the right to create it cannot be assigned or transferred to another (Daubigny v. Duval, 5 Term, 604; Caldwell v. Lawrence, 10 Wis. 332; Pearsons v. Tincker, 36 Me. 384), unless the assignment is made for the benefit of the assignor, and to be held as his agent, so that the lien may be preserved (Urquehart v. McIver, 4 Johns. 103; McCombie v. Davies, 7 East. 5). The statute, under which the plaintiff claims, does not authorize a lien to be filed by the assignee of a debt for work performed under a building contract."

See, also, Norman & Co. v. Eddington, 115 Tenn. 309, 312, 89 S. W. 744. There is, in our opinion, no analogy between this class of cases and that we are considering. Again, it is urged that the case is controlled by the principle which denies the assignability of actions for fraud and deceit, or mere naked rights to overthrow legal instruments. But, conceding the analogy, for argument's sake, the distinction, with respect to actions for fraud and deceit, is clearly recognized between the assignment of a mere naked right of action and the assignment of something involving a right of property, as a debt or a chose in action. Thus: In Sweet v. Converse, 88 Mich. 1, 10, 12, 49 N. W. 899, 900, in which a judgment creditor's bill was filed to set aside a fraudulent conveyance by the debtor, it was said:

> "It is true that the law will not encourage speculation in the naked right to complain of a fraud; but a clear distinction is made of the assignment of a naked right to complain of a fraud and the assignment of a liquidated claim or judgment in favor of a creditor."

And again, after a discussion of authorities:

> "All of the cases cited concede that the rule contended for, that a right of action for fraud is not assignable, has no application to an assignment of something, which is in itself tangible and capable of delivery, involving a right of property."

In Reeder Bros. Shoe Co. v. Prylinski, 102 Mich. 468, 471, 60 N. W. 969, 970, it was held that the assignee of a vendor's account for goods sold could, upon discovery of the fraud inducing the sale, rescind the same and recover the goods sold. The court there said:

> "The action here is not for fraud or deceit; but to recover the property, on the ground that the title never passed. The assignee is in the same position as the assignor of the demand, with like rights of recovery. It was not an assignment of a right of action for the fraud, but the right of the assignor to recover the specific property."

In Traer v. Clews, 115 U. S. 528, 539, 540, 6 Sup. Ct. 155, 159, 160 (29 L. Ed. 467), the plaintiff, under assignment from his trustee in bankruptcy, sued to recover the value of certain corporate stock and the dividends thereon, claimed to have been fraudulently obtained by the defendants from the trustee. To the objection that a right of action was not assignable, the court said:

"The rule is that an assignment of a mere right to file bill in equity for fraud committed upon the assignor will be void as contrary to public policy and savoring of maintenance. But when property is conveyed, the fact that the grantee may be compelled to bring suit to enforce his right to the property does not render the conveyance void."

After a discussion of authorities, it was said:

"Applying the rule established by these authorities, we are of opinion that, so far as the question under consideration is concerned, the assignment of Tappan to Clews was the transfer, not merely of a naked right to bring a suit but of a valuable right of property, and was, therefore, valid and effectual."

In the instant case the right which was transferred was not a mere naked right to maintain suit to redress a wrong. If the contract was made between Chase and Berry & Co. through Schloss, Miller & Malone as agents of the former, both Chase and the firm of Schloss, Miller & Malone actually owed the debt to Berry & Co., not jointly, but severally. This debt was a property right under all the authorities, and as incident to it was the right to sue either the principal or the agent. Berry & Co. had two remedies available for the collection of this indebtedness, viz., suit against Chase or suit against Schloss, Miller & Malone. We have thus far discussed the question as if there was an analogy between the case before us and an action for fraud and deceit. In fact, the action here is merely to collect a sum due upon a contract which the law implies. Bibb v. Allen, 149 U. S. 481, 13 Sup. Ct. 950, 37 L. Ed. 819. The general rule is too well settled to require citation of authority that an assignment of a debt transfers all remedies which the assignor had, where no express agreement to the contrary is made. Among the familiar cases to which that rule is applied are assignments of notes secured by mortgage and transfers of promissory notes which carry therewith the right in the transferee to maintain suit against either or all of the indorsers, as the payee might have done. The case of Hager v. Swayne, 149 U. S. 242, 13 Sup. Ct. 841, 37 L. Ed. 719, cited by defendants, is not opposed to the rule above stated. In that case the nonassignability of an action to recover back an excess of duties paid was based upon an express provision of the statute declaring such assignment a nullity. Nor do we think the case is controlled by the rule of law adopted in Tennessee (but not universally elsewhere) that the vendor's equity as security for the purchase price does not pass to the assignee of the vendee's obligations. Cate v. Cate, 87 Tenn. 41, 9 S. W. 231.

In our opinion the learned trial judge erred in holding that the right of election in question was not assignable.

It is urged, however, that defendants were entitled to a direction of verdict in their favor upon each of two other grounds. The first of these is that the purchase of the stock was required by the alleged

contract to be made according to the rules of the Exchange in New York, and that it was not so made. A member of the firm of Schloss, Miller & Malone testified, with respect to the contract with Chase, that the latter "said in all his stock transactions he wanted them on the New York Stock Exchange or the Consolidated Stock Exchange; in other words, he specified that he wanted all his transactions made absolutely and not bucketshop transactions." And again:

"He said the Consolidated Stock Exchange or the New York Stock Exchange, whichever was the most advantageous, didn't make any difference to him so long as it was on the actual transaction through the New York Stock Exchange and under their rules."

The rules of the exchange through which the original short sale was made provided in substance that margins called for before 2:20 p. m. must be deposited within one-half hour thereafter; that if called for after 2:20 p. m. must be deposited by 10:30 a. m. of the following day; and in case of default:

"The party calling having given due notice may report the default to the presiding officer of the exchange who shall purchase the security forthwith in the exchange, and any difference that may accrue shall be paid over to the party entitled thereto."

The record shows that on May 8th the market for Northern Pacific stock was excited; the market generally rising, although fluctuating. There was testimony: That on that day Berry & Co. called upon Schloss, Miller & Malone by wire for a readjustment of margins. That the latter firm called on Chase to furnish either the stock or sufficient money to protect it. That the latter promised to do the one thing or the other the next morning. That he failed to do so. That on the next day (May 9th) Berry & Co. continued to make telegraphic calls on Schloss, Miller & Malone for money, finally asking for $20,000. The stock ranged that day from $170 to $1,000 per share, closing at $350. That Schloss, Miller & Malone tried to find Chase on May 9th at his place of business, as well as elsewhere. That they failed to do so, and after 2:20 p. m. wired Berry & Co. to buy at $350 per share. That Berry & Co. received this order before the exchange closed, and bought in the stock on the exchange that day at $325 per share; that being the price on which the plaintiff's damages are based. That the market opened the next morning at $150 per share.

It is urged that the purchase was not made under the rules of the exchange because not carried over until 10:30 a. m. the next day, and because not executed by the president of the exchange; and that if executed at the latter time the loss would have been based upon a purchase at $150 per share only. It is assumed, for the purposes, at least, of this opinion, that in this suit against Chase, as the undisclosed principal, the extent to which the latter is bound, as respects the authority to Berry & Co. to purchase, must be measured by the actual authority given by Chase, either in terms or by his conduct; as Schloss, Miller & Malone were not held out as Chase's agents, and the principle governing under circumstances of such holding out does not apply. But assuming, though not deciding, that Chase's original authority to sell required that the calling of the margins or the

purchase of stock to cover the short sale be made, as between Berry & Co. and Chase, under rules applicable between members of the exchange, the record does not convince us that the remedy by way of purchase through the president of the exchange was exclusive rather than permissive. If such remedy was not exclusive, Berry & Co. had the right, under the circumstances of Chase's default testified to, to buy at once, provided they acted in good faith and in the exercise of their best judgment as to the necessity of so doing. Armstrong v. Bickel, 217 Pa. 173, 66 Atl. 326. In any event, even had Berry & Co. waited until the next morning before purchasing they would have been compelled, as appears by the record, to pay $150 per share, which purchase would have entailed a loss of $1,384.75. In our opinion defendant was not entitled, upon the record presented, to a direction of verdict in its favor upon the ground of failure to buy according to the rules of the exchange.

The other ground urged as justifying direction of verdict for defendant is that Schloss, Miller & Malone had themselves paid Berry & Co. the amount of their loss, and caused the assignment to be made to Darwent, and this suit to be brought and prosecuted, for their own use and benefit; and that such action is a fraud upon the court, as creating a fictitious appearance of diversity of citizenship necessary to jurisdiction. These facts were pleaded in abatement. By stipulation the issues under the pleas in abatement and in bar were to be tried together. If it be assumed that the facts so pleaded would, if proven, have defeated the present action, it is enough to say that the evidence in support of the plea was not so clear and undisputed as to authorize the direction of verdict.

The judgment of the Circuit Court must be reversed, and a new trial ordered.